UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Petitioner,

    v.

MONTGOMERY GLOBAL ADVISORS V LLC, et al.,

    Respondents.

No. C 04-00733 EDL

ORDER GRANTING MOTION FOR CONTEMPT AND SANCTIONS

Judge Fern M. Smith referred this matter to this Court for an evidentiary hearing to determine whether Respondents Montgomery Global Advisors V LLC ("Montgomery") and Groh Asset Management ("Groh Asset") (collectively, "Respondents") have complied with the order issued by Judge Smith dated March 18, 2005. The Court held the evidentiary hearing on May 13, 2005, at which Jennifer Giaimo appeared on behalf of Petitioner United States of America ("Petitioner"), and Steven Mather appeared on behalf of Respondents. With the agreement of the parties, the proceedings were completed by telephonic hearing on June 7, 2005. On June 28, 2005, with the consent of all parties, this action was reassigned to the undersigned for all purposes, including the exercise of civil contempt authority pursuant to 28 U.S.C. § 636(e)(4).

//

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Internal Revenue Service ("IRS") issued eight administrative summonses to each Respondent on April 11, 2003, in connection with its investigation into Respondents' role in organizing and selling tax shelters. The purpose of the investigation is to determine Respondents' compliance with the registration and list maintenance requirements of applicable provisions of the Internal Revenue Code and potential liability for penalties for the period January 1, 2000 through April 10, 2003. The present motion for contempt concerns one of those summonses.

On February 23, 2004, Petitioner filed a petition to enforce the summonses, which required Respondents, among other things, "to make a diligent search of your records and documents [as defined in the summons] that are in your possession, custody or control." (Pet. Exh. 29.) Judge Hamilton issued an order to show cause on March 17, 2004, and on April 6, 2004, the case was reassigned to Judge Smith. Respondents unsuccessfully challenged the validity of the summonses under United States v. Powell, 379 U.S. 48, 57-58 (1964), and the Court granted the petition to enforce the summonses. (May 4, 2004 Order.)

Respondents' principal, Roger Groh ("Groh"), first provided documents in response to the summonses in May 2004, one year after the summonses were issued. (October 8, 2004 Declaration of Margaret Johnson White ("White"), ¶¶ 5-6; Transcript of May 13, 2005 Evidentiary Hearing at 101.) Finding Respondents' documents incomplete, Petitioner filed motions to reopen and for contempt on October 8, 2004. In its moving papers, Petitioner limits its motion for contempt to noncompliance with the particular summons, served on each Respondent, commanding production of information regarding Section 1256 Contract Transactions. (Notice of and United States' Motion for Contempt and Memorandum in Support at 2.) The Internal Revenue Code defines a Section 1256 Contract as one of the following: (1) any regulated futures contract, (2) any foreign currency contract, (3) any nonequity option, or (4) any dealer equity options. Id. Petitioner alleges that Respondents advised investors in the purchase and trade of foreign currency option contracts and the subsequent donation of these contracts to charities. Id. at 2-3.

Judge Smith twice granted continuances of the hearing on Petitioner's motions, originally set for November 18, 2004, based on the parties' agreement to meet and confer in an effort to resolve

the dispute over Respondents' compliance. Prior to the hearing on the motions, the IRS visited Respondents' office on November 29, 2004, with Groh present, and Respondents produced additional documents in October, November and December 2004, including electronic documents on a compact disc. (May 13, 2005 Transcript at 101; June 7, 2005 Transcript at 3-4.) Groh communicated directly with IRS Agent Margaret White about documents that she identified as missing. (June 7, 2005 Transcript at 4, 7, 10-11.) Agent White also reviewed the client documents of Respondent Groh Asset, and determined that those documents did not relate to the foreign currency option transactions that were the subject of the investigation. Id. at 41.

Judge Smith held a hearing on Petitioner's motions to reopen and for contempt on March 17, 2005. Judge Smith found that Respondents failed to comply with the Court's May 5, 2004 order enforcing Petitioner's summonses, citing Agent White's declaration and supporting spreadsheet which identified the documents requested by Petitioner but not provided by Respondents. March 18, 2005 Order at 3. Judge Smith also held that Groh's declaration and his notations on the supporting "missing document" list further supported a finding of noncompliance, finding that Respondents' asterisk notations lack the specificity required by the summonses to state "the efforts made to locate the documents or records and the reasons such documents or records are unavailable." Id. at 3-4.[1]

In her Order Granting Motion to Reopen Case and Continuing Motion for Contempt, Judge Smith articulated the standard for a civil contempt proceeding: "If a party 1) fails to follow a clear order of the Court, 2) the evidence of non-compliance is clear and convincing, and 3) the party has failed to show that it <u>cannot</u> comply, a court may hold that party in contempt pursuant to its inherent power." March 18, 2005 Order at 2 (citation omitted). If the respondent asserts a "'present inability to comply with the order in question,'" he bears the burden of production on this defense, i.e., "he

---

[1] The instructions to each of the summons requires the following:

"If you are unable to locate documents or records, then state with specificity the efforts made to locate the documents or records and the reasons such documents or records are unavailable. If the requested records or documents do not exist, so state. If the requested records or documents exist, but are not available to you, state where such documents are located and provide the name, current address, and telephone number of the custodian. If you have disposed of any responsive document, state when such document was disposed of, the reason for such disposition, and the identity of the person(s) that may have possession of a copy of such document." (Pet. Exh. 29 (White Decl., Exhs. 1 and 2.))

3

must demonstrate that compliance is an impossibility." Id. at 3 (quoting U.S. v. Rylander, 460 U.S. 752, 756-57 (1983)).

Judge Smith held that Respondents' rather cryptic asterisk notations amounted to clear and convincing evidence that Respondents failed to comply with the summons and, thus, the Order. She instructed Respondents to follow the guidelines of the summons. Id. at 4. Judge Smith also found that Respondents did not demonstrate that compliance is factually impossible. Respondents did not either produce evidence that they cannot deliver the documents or state with specificity why the documents are unavailable. Id. Judge Smith gave Respondents until April 14, 2005 to comply, or to face sanctions of $1,000.00 per day commencing on April 15, 2005 until Respondents complied by delivering the documents or declaring with specificity their non-existence. Id. The Court awarded Petitioner its costs incurred in bringing its motion for contempt. (April 11, 2005 Order Awarding Costs.)

Respondents produced additional documents on April 13 and 14, 2005; among these documents were signed confirmations that Respondents had not previously produced. (May 13, 2005 Transcript at 101, 112.) Respondents further provided documents among the exhibits to their Pre-Hearing Statement in preparation for the May 13, 2005 evidentiary hearing. (Docket no. 49.) According to Agent White, Respondents had not previously produced the representations which were included in Exhibit C to their brief. (May 13, 2005 Transcript at 101-02.)

Judge Smith referred to a Magistrate Judge the limited question whether Respondents complied with her March 18, 2005 Order by either delivering the appropriate documents to Petitioner, or by declaring, with specificity, that the documents do not exist. (April 14, 2005 Order.) Judge Smith further ordered a fine in the amount of $1,000.00 per day for every day that any noncompliance continued from April 15, 2005 forward. Also, if found noncompliant, Respondents will be further ordered to reimburse Petitioner for costs involved with the continued hearing on April 14, 2005, up to, and including, the date of compliance. Id.

**II.   DISCUSSION**

The present contempt proceeding concerns only Montgomery's response to the summons
//

4

relating to Section 1256 Contracts. Agent White testified that she determined that Respondent Groh Asset's files did not contain documents relating to foreign currency option transactions (June 7, 2005 Transcript at 4), and Groh testified that Groh Asset divested itself of its currency business to Respondent Montgomery, which acquired all of Groh Asset's documents (May 13, 2005 Transcript at 86-88).

Respondent Montgomery is hereby held in contempt of the Court's order enforcing the summonses. The Court finds that: 1) Montgomery has failed to comply with the Court's order by failing to make all reasonable efforts to produce documents that are in its possession, custody or control; 2) evidence of Montgomery's noncompliance is clear and convincing; and 3) Montgomery has not shown that compliance is impossible. The previously unproduced documents which Respondents filed on May 3, 2005 with their Pre-Hearing Statement constitute clear and convincing evidence that Respondents did not timely produce all documents in their own possession. Furthermore, Montgomery has not explained the unavailability of requested documents with the specificity which Judge Smith ruled was required by the summons. March 18, 2005 Order at 3-4. Finally, Respondents have not met their burden to show that compliance is impossible.

**A.     Respondents Did Not Produce All Documents In Their Possession Prior to April 15, 2005.**

In support of their May 3, 2005 Pre-Hearing Statement, Respondents submitted copies of documents from Montgomery's client files, nineteen days after the April 14, 2005 deadline Judge Smith set for compliance or the commencement of fines to follow on April 15. In their Exhibit C, Respondents submitted documents from one representative file showing documents provided to Petitioner in paper form. Petitioner determined, however, that Respondents had not previously produced the representations that were contained in Exhibit C. (May 13, 2005 Transcript at 102.) Petitioner has established by clear and convincing evidence that Respondents did not produce all responsive documents in its possession prior to April 15, 2005, and were in contempt of the Court's order at least through May 3, 2005.

//

//

### B. Respondents Have Not Met Their Burden to Show That They Do Not Currently Possess All the Documents Requested and Identified as Missing.

Respondents have identified three types of client files: paper files in hanging folders, electronic files generated by RBC or LP Research and maintained on Respondents' computer, and electronic files maintained on Respondents' computer system with the Advent portfolio management software. (May 13, 2005 Transcript at 70-71, 76.) Groh testified that he or his assistant copied every page from Respondents' paper files. See id. at 67-68. Groh also testified that he printed out a client list and transaction summary from the Advent system and provided hard copies to the IRS in November 2004 and April 2005. Id. at 73-76. Groh also copied Respondents' electronic files onto a compact disc for Petitioner. Id. at 84. Groh explained that the CD would have documents that were not maintained in the paper file, such as schedules referred to in assignment agreements. Id. Agent White, however, testified that Respondents' CD contained no schedules as attachments to an assignment agreement; only confirmations, assignment agreements and trade instructions, identified also as the lists from RBC. Id. at 106. The Court's own review supports Petitioner's contention that the CD contained no documents called "schedules," but consisted primarily of spreadsheets containing trading information. Agent White acknowledged that the CD contained information about transfers made to a charity, but stated that she could not identify whether that information was the schedule to any particular assignment agreement. (June 7, 2005 Transcript at 14.)

Petitioner also contends that the CD contains no close-out trade instructions for many investors. (Pet. Brief at 5-6.) Groh explains that "[n]ot all customers had closeout trades. Many options simply expired." (April 14, 2005 Groh Decl. at 7.) This explanation fails to specify, however, whether that was true for each of the clients whose file contains no close-out trades. Petitioner further contends that the CD contains no gain and loss statements for any investors, and is missing trade instructions and/or trade confirmations for many investors. (Pet. Brief at 5-6.)

Petitioner identified several categories of documents which have been produced for some client files, but not others, as summarized in a Missing Document List provided to Respondents. See April 14, 2005 Groh Decl., ¶ 8. Respondents have sufficiently explained the absence of certain documents, such as paper copies of schedules that were sent to and likely retained by clients, and

6

documents identified in Groh's Missing Document Legend. (May 13, 2005 Transcript at 84; April 14, 2005 Groh Decl.) The Court accepts Respondents' contention that not all categories of documents necessarily existed for each client. However, Petitioner has made a showing that some documents were produced for the first time after April 15, 2005. (Pet. Brief at 6; Resp. Exh.C.) Furthermore, Groh's testimony indicates that Respondents should have certain documents that have not been produced. For example, Groh testified that he should have a written confirmation for each trade executed in connection with the foreign currency option transactions, although not all have been signed. (May 13, 2005 Transcript at 21, 23.) Petitioner has identified three investors, however, for whom no confirmations were produced. (Pet. Brief at 8.) Similarly, Groh testified that an assignment agreement should exist for any transaction involving an assignment to a charity (May 13, 2005 Transcript at 12-13), but no assignment agreement was produced as to four investors. Id. at 103-04.

The Supreme Court has held that in a civil contempt proceeding for failure to comply with a court order enforcing an IRS summons, the respondent has the burden of production on the defense that compliance is factually impossible. Rylander, 460 U.S. at 757. The Supreme Court made clear that a respondent could not raise the issue of lack of possession or control of records for the first time in a civil contempt proceeding, but could assert a present inability to comply with the enforcement order. Id. There, the respondent had submitted a declaration that he did not possess the records and did not dispose of them; he later took the witness stand to verify his denial of possession but asserted his privilege against self-incrimination when the government attempted to cross-examine him. The Supreme Court held that his declaration and direct testimony were not sufficient to shift the burden of production back to government on the issue of whether respondent lacked possession or control at the time of the contempt proceeding. Id. at 757-58.

Here, Respondents did not challenge the summons for lack of possession or inability to comply at the time the enforcement order was issued. (Pet. Brief at 2.) See April 20, 2004 Opposition to Petition. The Court's enforcement order, "unappealed from, necessarily contained an implied finding that no defense of lack of possession or control had been raised and sustained in that proceeding." Rylander, 460 U.S. at 760-761. Judge Smith's enforcement order gives rise to a

presumption of continuing possession, requiring Respondents to come forward with evidence to support a defense that they are presently unable to produce documents. Id. Respondents did not present any evidence or even argue that documents that it possessed or had control of at the time of the enforcement order had become unavailable through no fault of its own, such as a warehouse fire.

Judge Smith previously held that Respondents' asterisk notations on the Missing Document Legend in support of Groh's February 14, 2005 Declaration did not meet the specificity required by the summons. (March 18, 2005 Order at 4.) Similarly, Groh's "Missing Document Legend" in support of his April 14, 2005 Declaration fails to define the "na" designation for certain documents, and the legend lacks explanations for numbers 10, 25 through 33 and 41. (May 13, 2005 Transcript at 59-63; April 14, 2005 Groh Decl.) Groh's only explanation for this shortcoming is that he had only about a week between the time he received an updated Missing Document List from the IRS and the contempt hearing on April 14, 2005, which followed an all-day deposition on April 13. (May 13, 2005 Transcript at 93-94.) However, Groh reviewed the client files for the documents that the IRS identified as missing in preparation for his Missing Document Legend. Id. at 92-93. Yet he still could not explain the unavailability of these documents designated as either "na" or numbered 10, 25 through 33 or 41. Id. at 59-60. Groh's inability to explain his own designations on the Missing Document Legend falls short of the specificity required by the summons and the Court's order.

Here, Respondents have made some good faith efforts to identify some missing documents. These efforts do not, however, amount to substantial compliance where Petitioner has identified specific documents that Respondents still have not accounted for, whether as nonexistent or as not available in their possession or control. Cf. General Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1379 (9th Cir. 1986) ("[i]f a violating party has taken 'all reasonable steps' to comply with the court order, technical or inadvertent violations of the order will not support a finding of civil contempt."). See also United States v. Darwin Construction Co., 873 F.2d 750, 755 (4th Cir. 1989) (rejecting respondent's claim that it was not given enough time to substantially comply where summons had been issued a year before and it was ordered to comply more than two months before the contempt proceeding).

Petitioner shall provide Montgomery with a revised Missing Document List that reflects documents that have been produced since the date of the latest version of that list, March 24, 2005. See April 14, 2005 Groh Decl. Petitioner's revised Missing Document List shall also reflect documents which Respondents have specifically accounted for in Groh's Missing Document Legend. Id. Montgomery shall respond to the revised Missing Document List with the requisite specificity in compliance with the present order and Judge Smith's March 18, 2005 Order.

### C. Respondents Did Not Produce Transaction Documentation Maintained by Third Parties.

The summons requires Montgomery to search documents in their possession, custody or control. The IRS' power to compel document production and testimony is governed by statutory authority granted to the Secretary of the Treasury, and the IRS as his designate. United States v. Euge, 444 U.S. 707, 710 (1980). See 26 U.S.C. § 7602(a)(2) (authorizing the Secretary, in the course of an investigation, to summon "any person having possession, custody or care of books of account containing entries relating to the business of the person liable for tax"). The scope of the summons at issue here includes "documents in the possession of attorneys, accountants, affiliates, advisors, representatives, or other persons directly or indirectly employed by you, hired by you, or connected with you or your representatives, and anyone else otherwise subject to your control." (Pet. Exh. 29 (Attachment 1 to Summons.)) The summons also requires Montgomery to provide the names, telephone numbers and addresses of the custodians of existing documents which were not available to it.

As Groh informed Agent White during the course of the investigation, Montgomery outsourced much of the transaction paper that was generated for its clients to Royal Bank of Canada ("RBC") and LP Research. See May 13, 2005 Transcript at 65-66, 86-87; White Direct Exam. Testimony at 15. Montgomery did not create its own separate documentation for those transactions, but relied upon RBC's reports because their reporting system was preferable to its own. (May 13, 2005 Transcript at 85-86. Groh testified that although he has asked RBC or LP Research for documentation, he probably did so only prior to receiving the summons and did not know that he had done so since. Id. at 98. In responding to a summons pursuant to an IRS investigation, the respondent must make in good faith all reasonable efforts to comply. Darwin Construction Co., 873

F.2d at 754-55 (citing United States v. Ryan, 402 U.S. 530 (1971)). Although perfect compliance is not required, substantial compliance requires all reasonable efforts to produce documents within the respondent's possession or control. Id. (affirming finding of contempt where respondent corporation failed to produce documents that were in the custody of its president, who refused to produce the records on Fifth Amendment grounds). See also United States v. Hayes, 722 F.2d 723, 725-26 (11th Cir. 1984) (vacating finding of no contempt where records were in Switzerland and business partner would not release records due to concern over separate tax investigation). In Hayes, the Eleventh Circuit found that traveling to Switzerland and merely requesting the documents from the record-keeper did not amount to "all reasonable efforts" to comply, where the respondent did not pursue other avenues for obtaining the material or compelling disclosure. Id. Here, Respondents have not shown that they even requested the documents from RBC or LP Research in response to the summons.

Respondents contend that they must only produce documents in their possession, and are not required to create additional documents. However, Respondents cite no valid authority in support of this position. See Resp. Brief at 6, citing United States v. Brown, 536 F.2d 117 (6th Cir. 1976), disapproved by United States v. Euge, 444 U.S. 707, 708 n.1 (1980) (enforcing IRS summons requiring handwriting samples). In Euge, the Supreme Court reversed the Eighth Circuit's decision reversing the lower court's order to enforce the summons, and rejected the appellate court's reasoning that the authorizing statute "does not authorize the IRS to compel a taxpayer to create evidence 'out of thin air.'" Euge, 444 U.S. at 710 n.2. On the one hand, Groh's testimony indicates that the transaction documentation maintained by RBC and LP Research was under some degree of Respondents' control, as RBC made the transactions in Respondents' name. (May 13, 2005 Transcript at 21.) On the other hand, RBC and LP Research are third party entities, not partners or affiliates of Montgomery. Cf. First Nat. City Bank of N.Y. v. Internal Revenue Service, 271 F.2d 616, 618 (2nd Cir. 1959) (corporation retained sufficient control over foreign branch records).

It appears that Montgomery has some control over its client documentation maintained by RBC or LP Research, and it appears that Montgomery's failure to request such documentation from RBC or LP Research violates the requirements of the summons. However, the Court does not base its finding of contempt on these grounds as it finds sufficient basis to hold Montgomery in contempt

10

without making a determination whether Respondents had control over those third parties' records. The Court notes, however, that any reasonable efforts by Montgomery to obtain responsive documents from RBC or LP Research would demonstrate good faith efforts at compliance with the enforcement order.

### D.   Sanctions for Coercive and Compensatory Purposes

Sanctions for civil contempt may be imposed for one or both of two purposes: (1) to compel or coerce obedience to a court order; and (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance. Shuffler v. Heritage Bank, 720 F.2d 1141, 1147 (9th Cir. 1983). Judge Smith previously found that a daily fine of $1,000.00 per day has the coercive purpose of bringing about the desired result of Montgomery's compliance with the summons. This amount takes into account the character and magnitude of the harm threatened by continued contumacy, namely, hindering Petitioner's ability to determine whether Respondents have complied with the relevant sections of the Internal Revenue Code. See id. at 1148. Judge Smith also found that compensatory sanctions are appropriate in the amount of actual costs incurred by Petitioner in bringing this motion for contempt. Id.

## III.   CONCLUSION

The Court finds Respondent Montgomery in contempt of the Court's May 5, 2004 Order. Montgomery will have thirty (30) days from the issue date of this order to comply fully with the summons relating to Section 1256 Contract Transactions. Montgomery is hereby ordered to respond with specificity, in accordance with this order, to a revised Missing Document List, to be provided by Petitioner within seven (7) days of the date of this order.

Montgomery is fined in the amount of $1,000.00 per day for each day of noncompliance, assessed retroactively from April 15, 2005 to May 13, 2005, and for each day from the date that Petitioner provides the revised Missing Document List to Respondent until it achieves compliance. Montgomery is further ordered to reimburse Petitioner for all costs involved with the continued hearing on April 14, 2005, the evidentiary hearing on May 13, 2005, the direct testimony of Agent White, and the telephonic hearing on June 7, 2005. Petitioner shall present the Court with a bill of

costs and supporting affidavit within fourteen days of the date of this order. Civ. L.R. 54-1. Respondents may file objections to the any item of cost within ten days after service of Petitioner's bill of costs. All parties are admonished to make good faith efforts to meet and confer on any further disputes that may arise about compliance with the summons and this order.

Dated: August 1, 2005

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge